IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MEIKA DESEAN BRITTON                                                              PLAINTIFF

v.                                                                      No. 3:18CV204-RP

CITY OF SOUTHAVEN, ET AL.                                                        DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the plaintiff's response to the court's order [12] to show cause why the instant case should not be dismissed under the doctrines of *res judicata* and collateral estoppel. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. For the reasons set forth below, the instant case will be dismissed under the doctrines of *res judicata* and collateral estoppel.

**The Show-Cause Order**

On December 7, 2018, the court issued an order for the plaintiff to show cause why the instant case should not be dismissed under the doctrines of *res judicata* and collateral estoppel. The court originally mislaid that response but has now reviewed and considered it. In the interest of clarity and ease of reference, the court will restate the contents of the show-cause order, largely unchanged.

The plaintiff, Meika DeSean Britton, filed the instant suit under 42 U.S.C. § 1983, challenging the circumstances surrounding his arrest on charges of contributing to the delinquency of a minor and violating the terms of his supervised release. The court has, however, dismissed on summary

judgment a substantially identical case that Mr. Britton filed in 2016. *See Britton v. Southaven Police Department, et al.*, 3:16CV84-MPM-RP (N.D. Miss.)

Generally, an affirmative defense (such as *res judicata* or collateral estoppel) must be pled, and not raised by the court *sua sponte*. A court may, however, do so when all of the relevant facts are contained in the record before the court and are uncontested. *Mowbray v. Cameron County, Texas*, 274 F.2d 269 (5th Cir. 2001). In that situation, "we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention by technically correct and exact pleadings." *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. Unit A Mar.1981). In the present case, the facts are uncontested, and the legal outcome appears unambiguous. The instant case is remarkably similar to a case the plaintiff previously brought in this court – and which the court decided against him on the merits.

## Mr. Britton's Previous Case[1]

In the previous case, the court set forth the following undisputed material facts:

> On May 5, 2011, Britton pled guilty to the charge of Child Exploitation and was sentenced to serve five years in the custody of the Mississippi Department of Corrections, followed by ten years of post-release supervision under the MDOC. Doc. 63 at 5. Britton was incarcerated until December 2015. On March 16, 2016 a police report was filed by an individual concerned that Britton had inappropriate contact with his 14 year old daughter. *Id.* at 9. Detective Brannon Rushing of the Southaven Police Department asked the parent for permission to use the daughter's phone and to pose as the daughter to communicate with Britton, and the parent and the minor consented. *Id.* at 11.
>
> After beginning his investigation, Detective Rushing discovered Britton was a registered sex offender, and was currently under supervision with MDOC for a ten year period, reporting to Probation Officer Frank Caswell. *Id.* On March 22, 2016, a

---

[1] The court takes judicial notice of prior proceedings involving the plaintiff, both state and federal. *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976).

juvenile female told Rushing that Britton had given liquor to minor children present at a gathering. Doc. 77 at 16. After several days of communicating, Detective Rushing arranged a meeting with Britton via his probation officer, Frank Caswell. *Id.* at 11. On March 24, 2016, Britton met with Detective Rushing and Probation Officer Caswell at the MDOC office in Hernando, Mississippi. *Id.* During the interview, Probation Officer Caswell asked Britton to produce his phone, and Britton stated he did not want Caswell to look in the phone and began to press buttons on the phone. *Id.* Detective Rushing, worried that Britton could be deleting incriminating evidence, took the phone for evidentiary purposes. *Id.* at 11-12. Detective Rushing informed Britton he could pick up a receipt for the seized property at the Southaven Police Department. *Id.*

On the same date, March 24, 2016, Detective Rushing applied for and obtained a search warrant for the contents of the phone. *Id.* at 13. A forensic analysis was then performed on the phone and its contents extracted. *Id.* at 15. On March 28, 2016 Britton was charged and arrested for Child Exploitation and Contributing to the Delinquency of a Minor. *Id.* at 16-19. On April 4, 2016, an Affidavit and Warrant were filed for Violation of Post Release Supervision due to the new charges. *Id.* at 24-25. Following a revocation hearing, the Circuit Court of DeSoto County, Mississippi, held that Britton had violated the terms of his supervised release, and imposed the remaining ten years of his sentence to be served in the custody of the Mississippi Department of Corrections.

Britton's version of the facts in this case differs from the defendants' only slightly. He notes insignificant differences (less than 30 minutes) in the timing of events surrounding his questioning and the seizure of his phone. He also alleges that, when he entered the Hernando building for questioning, he did not have his phone and went to retrieve it only when Caswell and Rushing requested a list of phone numbers. He also seems to dispute whether he was pushing keys on his phone at the time Detective Rushing seized it.

*Britton v. Southaven Police Department, supra* (Memorandum Opinion of May 31, 2017).

Based upon these facts, Mr. Britton claimed:

(1) Defendants Caswell and Rushing did not have probable cause to call him to a meeting;

(2) Defendants Caswell and Rushing did not have probable cause to seize and search his cellular phone; and

(3) Defendant Bonita Clark is responsible in her role as supervisor for the seizure and search of Mr. Britton's phone.

The court then held:

[T]he plaintiff's claim [regarding the propriety of the search and seizure] fails on the

merits, as the defendants had ample justification for seizing his phone and searching it
for evidence of improper communication with minors. [In addition], as Bonita Clark
had no direct involvement in the seizure and search of the plaintiff's cellular phone, he
has sued her solely in her capacity as supervisor, and a plaintiff cannot sustain a claim
under 42 U.S.C. § 1983 based upon a *respondeat superior* theory.

*Britton v. Southaven Police Department, et al., supra,* Doc. 82 at 5-6. Mr. Britton challenged these rulings on direct appeal. The Fifth Circuit discussed these claims on the merits[2], upheld this court's decision, and dismissed the appeal as frivolous. *Britton v. Southaven Police Department, et al.*, 17-60432 (April 2, 2017). These issues have been fully litigated.

### The Present Case

In the present case, Mr. Britton acknowledges that he has largely restated the allegations and claims from his previous case:

> [T]he majority of this suit consist[s] of the illegal actions of the Southaven Police Department and violations of my rights and substantive rights such as providing false statements to obtain warrants and known perjured testimony. Also manufactured exigent circumstances.

Doc. 1 at 6. His legal issues in the present case are the same as those in the previous one:

> My cellular phone was illegally seized by detective Rushing creating a violation of my 4th Amendment right[s].
>
> …
>
> Frank Caswell conspired with Rushing[,] helping him avoid the warrant requirement on March 24, 2016.
>
> …
>
> [The victim] provided detective Rushing with knowingly false statements which [led]

---

[2] This court denied Mr. Britton's motion to proceed as a pauper on appeal, finding that his appeal was frivolous. Thus, the Fifth Circuit's inquiry was limited to "whether the appeal involves legal points arguable on their merits (and therefore not frivolous)." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (internal quotation marks and citation omitted). Thus, the Fifth Circuit held that Mr. Britton's claims held no merit and dismissed his appeal as frivolous.

> to my illegal incarceration.
>
> …
>
> [Judge] David Delgado set a bond of [$]125,000 for a misdemeanor charge of contributing to the delinquency of a minor [– which Britton believes is excessive under state and federal law.]
>
> …
>
> Bonita Clark allowed her employee to conspire in a subterfuge of a probation meeting to investigate criminal activity.

Doc. 1 at 7-10.

In this section of his complaint, Mr. Britton includes facts which he claims were unavailable to him in his previous case: (1) defendant Rushing's statement that he believed Britton was deleting evidence from his phone; and (2) the victim knowingly provided the defendants with false statements, causing Britton to be arrested. Initially, the court notes that Mr. Britton knew of defendant Rushing's statement regarding potential destruction of evidence in the previous case, as the defendants included it as part of their summary judgment evidence in that case. Indeed, the court recited this fact in the memorandum opinion granting summary judgment to the defendants (and it is contained above in the quote outlining the facts from the previous case).

Without question, the gravamen of Mr. Britton's current case is the same as that of the previous one: his belief that the defendants did not have legal authority to detain him, seize his cellular phone, search it, and arrest him.

**Mr. Britton's Response to the Show-Cause Order**

Mr. Britton argues in his response to the show-cause order that Detective Rushing "created or manufactured an exigent circumstance to obtain a search warrant." He also alleges that the arrest warrant and the affidavit supporting the search warrant contained "reckless and falsified statements" and "misleading statements." He alleges further that the victim in the revocation proceeding "made

false statements implicating Britton in a crime that never occurred." Mr. Britton argues that he did not have knowledge of these statements until March 2017, when he found them in discovery documents from his previous suit. Mr. Britton offers the following allegations as newly discovered facts that would preclude dismissal of this case on *res judicata* grounds (restated here for clarity):

(1) Detective Rushing misrepresented the contents of the Facebook chats used to support the affidavit charging Mr. Britton with violation of Miss. Code Ann § 97-5-33, Child Exploitation. Mr. Britton argues that Detective Rushing made a false statement in the affidavit by stating that Mr. Britton told "a seventeen year old male to send him a photograph of his penis," when the Facebook chat stated only "I want to see your _ _ _ _," rather than the word "penis" or a slang equivalent.

(2) The victim knowingly made false statements to Detective Rushing regarding a tablet sold to Britton that contained a pornographic video of a minor. The victim made those statements to avoid prosecution for creating the videos.

In support of the first alleged "new" fact, Mr. Britton provides the same Facebook chat screenshots he submitted in his previous case – and the same denial that the four blanks stood for a slang term for the word "penis." Hence, that information is not newly discovered, and the claim is identical in both cases. In support of the second alleged new fact, Mr. Britton provides screenshots of several Facebook Messenger chat sessions, purportedly between the victim's friends (who are twins), the victim, Mr. Britton, and an unidentified person. Mr. Britton argues that these chat sessions show that the victim lied to the police about his communication with Britton. The chat sessions took place from March 28, 2016, through January 1, 2017 – the day of the search and seizure of the cellular phone at issue and the time afterwards. Mr. Britton was arrested on March 28, 2016.

### *Res Judicata* and Collateral Estoppel

All of the claims the plaintiff brings in this case are barred by the doctrine of *res judicata,* (claim preclusion), and by the related doctrine of collateral estoppel (issue preclusion). *Res judicata* means "a thing decided;" the doctrine states that a final judgment on the merits rendered

by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred. *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876), *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). *Res judicata* bars a plaintiff from bringing a second suit based upon the same event or series of events *by asserting additional facts* or proceeding under a different legal theory; the doctrine prevents "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *see also Goldberg v. R. J. Longo Constr. Co.*, 54 F.3d 243, 246 (5th Cir. 1995) (*res judicata* bars claims that were or could have been raised in prior actions).

In the Fifth Circuit *res judicata* bars a claim if: (1) the parties are the same in both actions, (2) the prior judgment is rendered by a court of competent jurisdiction, (3) the prior judgment was final on the merits; and (4) the cases involve the same cause of action. *Travelers Ins. Co. v. St. Jude Hospital of Kenner*, 37 F.3d 193, 195 (5th Cir. 1994). Two cases involve the same cause of action if both cases arise out of the same nucleus of operative facts. *Id. Collateral estoppel*, or issue preclusion, on the other hand, precludes relitigation of issues actually adjudicated, and essential to the judgment, in prior litigation involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).

Mr. Britton's allegations in this case are precluded by the doctrine of *res judicata* because: (1) The same parties are involved in this claim: Britton, Rushing, Caswell, and Clark; (2) This court had jurisdiction over the previous matter; (3) The prior judgment was final and on the merits; and (4) The allegations in this case arise out of the same nucleus of operative facts: Mr. Britton's meeting with defendants Caswell and Rushing, the seizure of his phone, and his subsequent arrest.

The issues in the present case were actually adjudicated in the previous case, essential to the judgment, and involved Mr. Britton, the party against whom estoppel would operate. Thus, collateral estoppel also precludes relitigation of these issues. To afford Mr. Britton due process, the court provided him the opportunity to brief the matter, and he has done so.

### The Plaintiff's Claims Would Fail on the Merits, Even if the Court Accepted the Plaintiff's "New" Evidence

As the court found in Mr. Britton's previous case, the defendants had ample evidence to establish probable cause to search his phone and arrest him:

> [A] father had observed his 14-year-old stepdaughter's communications with Britton, who was 45 years old at the time. Britton had asked her to come babysit for him, requested a photograph of her, and told her that her "short friend was cute." He also asked about one of the young girl's friends who liked black guys, describing the attraction as "jungle fever." The girl's father was clearly concerned about the inappropriate nature of the communications: repeated efforts to have his young daughter come to Britton's home, his request for a photograph of her, the discussion of his attraction to the young lady's friend, and sexual innuendo regarding another of her minor female friends. Based on this information, Detective Rushing conducted an investigation, communicating with Britton while posing as the young girl. At an interview set up by Frank Caswell, Britton's probation officer, Britton refused to surrender his cellular phone for inspection, as he is required to do under Mississippi law.
>
> …
>
> [Law enforcement officers] had a concerned father who had seen inappropriate text messages between a teenaged girl and Britton – a sex offender previously convicted of child exploitation. This information, coupled with Rushing's continued investigation, provided ample information to establish reasonable suspicion that Britton was violating the terms of his supervised release.
>
> …
>
> Indeed, it appears that Britton continued his efforts to contact the young girl – even after he was aware that the police had become involved. This is astonishing behavior for someone on supervised release for a sex crime involving children. Clearly, Britton's obvious and strong predilection for convincing minors to record sexual acts on video, as well as his opportunity to delete potentially incriminating data from his cell phone, pushed the information at Caswell and Rushing's disposal beyond "reasonable suspicion" into the realm of "reasonable belief,"

which is sufficient to provide probable cause to seize the phone, whether from a parolee or otherwise.

In any event, as Mississippi law permits probation and parole officers to subject "[a parolee,] his home and his effects, to inspection and search as may seem advisable to them," *Barlow*, 8 So. 3d at 202, the seizure and search of Britton's cell phone was permissible under both state and federal law. *United States v. Keith*, 375 F.3d 346, 350 (5th Cir. 2004). This is especially true when, as here, an officer is concerned that a suspect will destroy evidence – and the officer secures a search warrant immediately after the seizure.

*See Britton v. Southaven Police Department, et al.*, 3:16CV84-MPM-RP (N.D. Miss.), Doc. 82 at 11-13. Put simply, the defendants had at their disposal far more evidence than the chat sessions from Mr. Britton's phone to justify seizing the phone, searching it, and arresting him for violation of the terms of his parole.[3] The court found this to be true in the previous case, and the Fifth Circuit Court of Appeals affirmed that decision. This issue has been fully litigated.

**Evidence That Mr. Britton Himself Presented Is Detrimental to His Case**

In his various cases in this court, Mr. Britton has presented documents in an effort to support his allegations; however, many of the documents do great harm to his legal position. For example, Mr. Britton included a partial chat thread between him and the minor male victim in his response to the court's show cause order. In that thread, after discussing the victim's weight, Mr. Britton tells the victim, "I want to see your _ _ _ _." Doc. 19 at 9. The victim clearly believed Britton was asking to see a photograph of his penis, as Britton himself acknowledged later in the chat. Doc. 19 at 10. Britton then responded that the four blanks referred to the victim's "Legs." *Id.* As to the victim's penis, Britton responded, "Think hard i have seen that." *Id.* Britton did not explain why he felt the

---

[3] In addition, the chats upon which Mr. Britton relies to support his claim of newly discovered evidence occurred *after* the seizure and search of his phone. As such, those chats have no relevance to whether the defendants had legal justification for seizing the cell phone and arresting him.

need to use blanks, instead of spelling out the word "Legs" in the chat, and the court cannot think of a reason to do so.

Mr. Britton included another partial, but more complete, version of this chat in a supplement to his complaint in a previous case. *See Britton v. Southaven Police Dept.*, 3:16CV84-MPM-RP ("*Britton I*"), Doc. 19 at 18-23. Immediately after asking to see a photograph of the victim's "_ _ _ _," Britton asked, "Would you really drink if I … [g]ot it," to which the victim responded, "Hell yeah I would drink." *Britton I* at 19. As set forth above, one of the reasons the police were investigating Britton was the allegation that he was providing alcohol to minors.

Britton then initiated the following exchange with the minor victim:

| | |
|---|---|
| **Britton:** | Answer the previous question [which was "So did you really think I would as[k] you for a pic of your dick[?]."] |
| **Victim:** | Maybe [I don't know]. |
| **Britton:** | Wow |
| **Victim:** | Ok |
| **Britton:** | Can I tell you a secret[?] |
| **Victim:** | Yea |
| **Britton:** | Tyler stole your tablet and they sold it to me then t[o]ld you something about leaving [i]t at school |
| **Victim:** | Oh well |
| **Britton:** | So can I ask [a] personal question and [you] be honest[?] …. [Why] did you make those videos[?]  [W]ho were they for[?] |
| **Victim:** | They was for my girl. |
| **Britton:** | Ok she cute. |
| **Victim:** | Yea but I broke up with her. |
| **Britton:** | [Why?].  So you a virgin[?] |

| | |
|---|---|
| **Victim:** | Yea |
| **Britton:** | So is my [John-John].[4] |
| **Victim:** | Lol |
| **Britton:** | [You] staying tonight[?][5] |
| **Victim:** | Nah. |
| **Britton:** | [Why] not[?] |
| **Victim:** | Cause my dad won't let me[.] |
| **Britton:** | Beg. You what three months from 18[?] |
| **Victim:** | They are staying at [Jane's house][6] tonight |
| **Britton:** | Oh. |
| **Victim:** | Yep |
| **Britton:** | Double blow jobs |
| **Victim:** | [Jane] said double your pleasure double your fun[7] |
| **Britton:** | Nice film it[.] Tell her shes a good girl remember |
| **Victim:** | She was [just kidding.] [S]he don't like [James Doe] like that and she is a good girl. |
| **Britton:** | Liar [I know] the truth |
| **Victim:** | She said whatever. |

---

[4] John and James Doe (pseudonyms) are twin brothers and minor friends of the victim. In this instance, Britton used a pet name for one of the twins.

[5] Britton does not specify the location where the victim might stay overnight in the chat; nor does he do so in notes placed in the margins. He placed many notes in the margins of the chat sessions attempting to "clarify" the language but was did not clarify this important fact.

[6] Jane Smith (pseudonym) is a minor friend of the victim and John and James Doe.

[7] Jane is obviously participating in the conversation in real time, but in a way available to the victim, but not Britton.

| | | |
|---|---|---|
| **Britton:** | | Ok [Jane Smith] [w]hen will u be 18[?] |

*Britton I*, Doc. 19 at 20-23.

The documents Britton presented also contain chats in which John Doe discusses acting as a prostitute:

| | | |
|---|---|---|
| **John:** | | He wants me but its gonna cost more. I'm not just gonna do it for nothing. |
| **Britton:** | | What do you mean[?] |
| **John:** | | He wants in my pants. It's gonna cost more [than] just [$]270 |
| **Britton:** | | [Why] and how do you know that. I'm jealous |
| **John:** | | Because he tells me and because I don't really wanna do it so if he want to its gonna cost em you understand. |
| | | And I told him you'd be jealous. |
| **Britton:** | | What ever when you do that[?] |
| **John:** | | Told him the other day. He's older than you isn't he?[8] |
| **Britton:** | | I could have had you if I wanted tha[t.] |

Doc. 19 at 26.

One must keep in mind that – at the time these chats took place – Meika DeSean Britton was on parole from his conviction for "solicit[ing] a thirteen-year-old boy to depict sexual acts for the viewing of another person over a computer network." *Britton v. State*, 130 So.3d 90 (Miss. Ct. App. 2013). Nonetheless, in these chats, Britton reveals that:

(1) He used a computer network to encourage minor children to engage in sexual activity and record it – *the precise activity that led to his conviction*. *Britton I*, Doc. 19 at 23.

---

[8] Britton was in his mid-forties at the time of the chats.

(2) He used sexually explicit language in chats with minors. Doc. 19 at 10.

(3) He possessed a video showing the minor victim performing sex acts.[9] Doc. 19 at 20-21.

(4) He did not immediately delete the video.

(5) He failed to inform the police about the existence of the video (to protect the victim).

(6) He discussed a minor boy's decision to engage in prostitution with an adult man and, rather than trying to dissuade the boy, he stated, "I'm jealous." Doc. 19 at 26.

(7) He discussed providing alcohol to minors (one of the allegations used to initiate and continue the investigation). *Britton I*, Doc. 19 at 19.

(8) He expressed intense curiosity regarding when the minors would reach 18 years, the age of majority. *Britton I*, Doc. 19 at 22-23.

(9) He failed to explain why he would buy a tablet from a minor.

(10) He admitted that, by the time of the chat, he knew he had purchased a tablet stolen from the victim, as well as who stole it and that it contained pornographic videos of a child engaged in a sex act. *Britton I*, Doc. 19 at 20-21.

(11) Britton and, perhaps, another person[10] offered and gave $100 in exchange for statements or testimony tending to exonerate him. Doc. 19 at 14-15, 19, 25.

Doc. 19 at 19-26; *Britton I*, Doc. 19 at 18-25.

To put is mildly, none of this helps Mr. Britton's case regarding probable cause to search his cellular phone and arrest him. First, the events occurred after his arrest; as such, they are not relevant

---

[9] Britton is a convicted sex offender with a predilection for soliciting sexually explicit videos from minor children. The odds are long, indeed, that, by mere chance, he purchased a tablet from a child which contained sexually explicit videos of the child.

[10] In some of the chats it is not immediately clear whether the person communicating with the minors is Britton or someone else. However, in a subset of those chats it becomes clear that Britton is participating. In fact, in one sequence Britton starts out referring to himself in the third person, "Sean['s] lawyer wants to know …", Doc. 19 at 21, then slips up and uses first person, "Does he care or know [I'm] in jail[?]". Doc. 19 at 22. Indeed, the style, tone, timbre, and perspective of all the chats are consistent with Britton being the adult participant. Certainly, if the author of the chats with the children is not Britton, he is a person acting on Britton's behalf, and Britton would know his identity.

to the issue of probable cause to support that arrest. Second, even if the chats occurred before Britton's arrest, the facts, which Mr. Britton himself provided, show that his interaction with these children was not innocent, but charged with sexual interest. There is no other rational explanation for his language and behavior.

As set forth above, police had information from multiple sources showing that Britton was pursuing children, seeking to have them perform sex acts on video, and plying them with alcohol to lower their defenses. The chats merely added to the information the police already had in their possession. This information was easily sufficient to support a warrant – and far more than that necessary to arrest and detain a convicted sex offender who is out on parole. Indeed, given the wealth information gathered prior to Britton's arrest, the police would have been remiss in their duty to protect the public if they had *failed* to arrest and detain him. The court found this to be true in the previous case, and Mr. Britton's latest submissions merely bolster that holding.

### The Chat Statements That Britton Relies Upon to Support His Position Were Contradictory, Unreliable, and Occurred After His Arrest

Britton relies upon a few statements contained in the chats tending to show that the victim lied to the police regarding the pornographic video contained on the tablet. He, and perhaps a "friend," chat separately with the minor twin boys – offering them $100 to obtain exonerating statements from the victim. Doc. 19 at 15, 19-20 (James Doe), 25 (John Doe). Britton's "friend" tells the twins he wants the "truth" in statements they obtain from the victim, but he refuses to pay the $100 unless the victim's statements say exactly what he wants:

**James Doe:** He said that's exactly what he said [and] that's it. [$]100.

**"Friend":** They think Sean asked him to make a video besides the one on tablet.
Tell him he needs to tell the truth

**James Doe:** Am I still [getting] my [$]100

| | |
|---|---|
| **"Friend":** | When he admits he lied get him to tell the truth and keep message like the one … you have |
| **James Doe:** | [Alright] |

Doc. 19 at 20.

There are some seemingly exonerating statements in the chats. When offered $100, both boys eventually say that the victim lied when he told police that Britton requested nude photos or videos. Doc. 19 at 15-17 (James). However, even those statements contain incriminating information about Britton:

| | |
|---|---|
| **James:** | Doesn't it suck that we all know the truth but aren't going to say anything[,] so maybe you get out soon[.] *But then again[,] if we said something you could be locked away for life[.]* |

Doc. 19 at 17 (emphasis added).

John also provided incriminating information about Britton:

| | |
|---|---|
| **"Friend":** | [Why] did [the victim] lie [about the] video[?] |
| **John:** | I didn't know he did[,] but that was [the victim's] tablet and his video |
| **"Friend":** | He [said] sean told [him to] send him nude pic[tures] |
| **John:** | *Yeah[,] Sean made comments like that to all of us* |
| **"Friend":** | No he hasn't |
| **John:** | *Yes he did* |
| **"Friend":** | *He joke[d] about what [Jane] said about [you] all.* |

Doc. 19 at 18 (emphasis added). In this exchange, John emphatically states that Britton requested nude pictures from "all of" the minor children involved, and the "Friend" even concedes that Britton indeed engaged in that behavior, at least when communicating with the victim and Jane Smith. Whether Britton was merely joking when discussing "double blow jobs" with teenagers – and encouraging them to "film it" is an issue to be resolved by a jury.

Again, these statements are devastating to Mr. Britton's defense against the new charges, especially since he was on parole after serving five years of a fifteen-year sentence on his conviction for sex offenses against children. Normal men in their mid-forties do not secretly communicate with teenagers about sex. Certainly Britton's decision to do so as a parolee shows a dangerous lack of judgment.

If the police had possessed this statement prior to Britton's arrest, they would likely have questioned the twins and others regarding what Britton had done that was worse than seeking sexually explicit videos from minors – something that would cause him to be "locked away for life." They could also have used John's statement to broaden their investigation to include Britton's interactions with the other teenagers in the group. In any event, as set forth above, the police had far more evidence than chat transcripts to support Britton's arrest and the search of his phone.

The chats occurred after Britton's arrest and were clearly designed to elicit exonerating statements from the victim in an attempt to prevail in his criminal trial. The twins' statements in the chats may have had some use in such a trial – but are not relevant to Britton's arrest and the search of his phone. It is unclear whether Britton ever obtained the exonerating statements he sought from the victim. The lack of such statements in the present case tends to show that he did not.

It is also unclear whether Mr. Britton will be tried on the charges arising out of his interactions with the minor children at issue in this case. If he is, then he may use the statements in support of his defense and, later, post-conviction collateral relief. The State may have decided to forego prosecution on these charges in light of the revocation of his parole and the reinstatement of the remaining ten years of his sentence.

The court notes that some of the statements the twins made during their chats with him were damning. This statement from John Doe is certainly unhelpful to Britton's cause:

| **James Doe:** | Look to be honest I could care less if you sat and died in prison[.] *you were trying to get at my brother and my friends* and that's not cool[.] you['re] very lucky that ya didn't try anything with me because you know the outcome of that. So I'm not answering any questions[.] yes *I think you should be in prison*[.] *you are a pedophile*[.] and yes *everything anyone said was true*[.] *you did give us liquor* on my birthday[.] *you did Receive that tablet with porn on it*[.] *everything they have pinned on you is [true] and I will tell anyone that you do not deserve to be part of the real world[.]* |
|---|---|

Doc. 19 at 16 (emphasis added).

Also, Britton clearly had sexual interest in John Doe, repeatedly stating that he would not hurt him and referring to him by the pet name "my John John." Indeed, Britton's "friend" uses the pet name to establish trust with John Doe when he thinks he is speaking to an undercover officer:

| **John:** | U the fuckin police[.] I ain't stupid |
|---|---|
| **"Friend":** | What I am. A fr[iend] of Sean[.] he calls you [John John] |

Doc. 19 at 20. Britton also tells both boys "I love you" when seeking information from them, and both boys respond, "I love you too." Doc. 19 at 17, 22, 25. Though not conclusive, this is also indicative of sexual interest in the boys.

It is also unhelpful to Britton's cause that his "friend" repeatedly refers to the twins as "snitches," revealing that Britton was involved in activity that he did not want authorities to discover. Doc. 19 at 14. Thus, the statements upon which Britton relies were contradictory, unreliable (purchased for $100), and immaterial (occurred after his arrest).

### Britton's Vexatious Behavior

In his litigation in this court, Mr. Britton has submitted documents containing the name of the minor victim of sexual assault and the victim's friends. As a result, the court issued an order restricting access to these documents to protect the identity of the minors involved in alleged sex

crimes. The court issued an order on December 4, 2018, in the present case warning Britton not to do so again:

> [Britton] is **WARNED** that, should he include the name of the victim in another paper filed with this court, then the instant case will be dismissed with prejudice. *This warning also applies to any future cases Mr. Britton may file*.

Doc. 9 (emphasis in original). Britton signed the Acknowledgment of Receipt of this order on December 17, 2018. Yet, on December 20, 2018 – three days after acknowledging the court's order – Britton submitted a document [19] containing multiple instances of the child victim's name. Doc. 19 at 9, 10, 14, 15, 18, 19, 20, 21, 22, 23. This is a flagrant violation of the court's recently-issued order. Britton cannot argue that he was unaware of the order, as he had acknowledged receiving it a mere three days before violating it. As such, the court will issue a separate order imposing a sanction against Mr. Britton to deter such behavior in the future.

## Conclusion

For the reasons set forth above, the instant case is **DISMISSED** with prejudice under the doctrines of *res judicata* and collateral estoppel. In the alternative, the case is **DISMISSED** on the merits. Finally, by separate order, the court will issue a sanction against the plaintiff for violating the court's order regarding submitting documents containing the names of sexual assault victims.

**SO ORDERED**, this, the 25th day of March, 2019.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE